COURT OF APPEALS OF VIRGINIA

Present:   Judges McClanahan, Haley and Petty
Argued at Chesapeake, Virginia

TRAVIS STACEY WHITEHEAD

                                               OPINION BY
v.      Record No. 0040-08-1           JUDGE WILLIAM G. PETTY
                                         NOVEMBER 12, 2008
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Rodham T. Delk, Jr., Judge

David W. Cassidy, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Travis Stacey Whitehead was convicted of possession of heroin, in violation of Code

§ 18.2-250, pursuant to a conditional guilty plea. The trial court sentenced Whitehead to five years

incarceration with three years and two months suspended. On appeal, Whitehead argues that the

trial court erred by refusing to suppress the drug evidence seized from his pocket, arguing that "a

narcotics detection dog alerting on a vehicle, without more" does not "give the police probable

cause to conduct a warrantless search of all the passengers" in a car. As explained below, we

disagree with Whitehead and affirm his conviction.

I. BACKGROUND

Whitehead bears the burden on appeal to establish that the trial court's refusal to suppress

evidence was erroneous. McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261

(1997) (*en banc*). An appellant's claim that evidence was seized in violation of the Fourth

Amendment presents a mixed question of law and fact that we review *de novo* on appeal. See

Ornelas v. United States, 517 U.S. 690, 691 (1996). "Under settled principles, we address the legal issues arising from a suppression motion 'only after the relevant historical facts have been established.'" Raab v. Commonwealth, 50 Va. App. 577, 579, 652 S.E.2d 144, 146 (2007) (*en banc*) (quoting Logan v. Commonwealth, 47 Va. App. 168, 171, 622 S.E.2 771, 772 (2005) (*en banc*)).

We review the facts developed in the trial court "in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences," Glenn v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citation omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008), and those factual findings are binding on appeal "unless plainly wrong or without evidence to support them," McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699) (internal quotation marks omitted).

On April 19, 2006, two Suffolk police officers stopped a car, in which Whitehead was the right rear passenger, for a traffic violation. One of the officers walked Xanto, a dog trained to detect drugs, around the car.[1] Xanto "alerted" to the scent of narcotics at the driver's door. After Xanto indicated the presence of drugs, the officers asked the car's occupants to get out so they could

---

[1] In this case, the parties stipulated that the officer and Xanto qualified as an expert "drug detection unit" and therefore Xanto's reliability is not at issue in this case. We do note with interest, however, that a dog's sniff was considered reliable as early as the twelfth century in England—at least according to Sir Walter Scott's The Talisman. The Kentucky Court of Appeals, discussing bloodhound evidence, related the following tale taken from Scott's work: When the Marquis of Montserrat stole the banner of England during a crusade and fled, King Richard I of England declared: "Dress yonder marquis in what peacock robes you will, disguise his appearance, alter his complexion with drugs and washes, hide himself amidst a hundred men; I will yet pawn my scepter that the hound detects him." Blair v. Commonwealth, 204 S.W. 67, 68 (Ky. 1918) (citation omitted). More recently, the United States Supreme Court noted that "a canine sniff by a well-trained narcotics-detection dog [is] '*sui generis*' because it 'discloses only the presence or absence of narcotics, a contraband item.'" Illinois v. Caballes, 543 U.S. 405, 409 (2005) (quoting United States v. Place, 462 U.S. 696, 707 (1983)). Thus, from Richard I's bloodhounds to the "canine cannabis connoisseur[s]" of today, United States v. Bronstein, 521 F.2d 459, 460 (2d Cir. 1975), the law has recognized that trained drug-detecting dogs are a legitimate source of information when they alert law enforcement to the presence of contraband in this minimally invasive manner. See Caballes, 543 U.S. at 409.

search the car. As the officer explained on cross-examination, Xanto's alert at the driver's door did not mean that the drugs were located at the driver's side of the car, only that it was where the dog had "the best airflow" to catch the scent of the narcotics—a scent that could have been coming from anywhere in the car or any of the car's occupants. Accordingly, after the officers found nothing in the car, they searched each of the car's occupants. The search of the first three passengers was unproductive. Whitehead was the last person they searched. In his pants pocket the officers found two syringes as well as a paper towel that had a "beer bottle cap wrapped up in it" containing a "burnt residue" that the officer, relying upon his training and experience, believed to be heroin.

## II. ANALYSIS

Whitehead does not challenge the officers' search of the car. See Brown v. Commonwealth, 15 Va. App. 1, 7, 421 S.E.2d 877, 881 (1992) (*en banc*) (holding that a drug-detecting dog's alert supplied probable cause to search an automobile). Instead, Whitehead argues that Xanto's alert to the presence of narcotics in the car did not provide the police with the particularized probable cause they needed in order to search him. Appellant's Br. at 5. We disagree. Even if we assume *arguendo* that a trained dog's detection of the scent of drugs coming from an occupied car does not, of itself, provide sufficiently particularized probable cause to search each of the car's occupants for drugs, we still conclude on these facts that the search of Whitehead's person did not violate the Fourth Amendment.[2]

Probable cause exists when "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in

---

[2] "[A]n appellate court decides cases 'on the best and narrowest ground available.'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*) (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring)). Thus, we need not and we do not decide in this case whether Xanto's alert on the vehicle in and of itself provided the necessary particularized probable cause to search Whitehead.

themselves to warrant a man of reasonable caution in the belief that an offense is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (internal quotation marks and citation omitted). In other words, probable cause exists when an officer has "a reasonable ground for belief of guilt" of some criminal conduct. Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotations and citation omitted). This "belief of guilt must be particularized with respect to the person to be searched or seized." Ybarra v. Illinois, 444 U.S. 85, 91 (1979). We review the totality of the circumstances to determine whether probable cause existed. Illinois v. Gates, 462 U.S. 213, 238 (1983).

Whitehead relies upon the Court of Appeals of Maryland's reasoning in State v. Wallace, 812 A.2d 291 (Md. 2002), to argue that the police did not have probable cause to search him. There, as here, the appellant was a passenger in a car stopped by police for a traffic violation. During the stop, police officers walked a drug-detecting dog around the car. Id. at 293. After the dog alerted to the presence of drugs near the driver's side front door, the officers asked the five occupants of the car to exit the car "so the police could search them." Id. at 294. The officers searched the driver, the front seat passenger, Wallace, and the two other passengers in that order. Id. The police only searched the car *after* they searched the passengers. Id. at 295. While the police did not find any drugs in the car or the other passengers, they did find cocaine on Wallace's person. Id. The court reversed Wallace's conviction because there were no facts—beyond the dog's alert on the vehicle—to indicate a probability that Wallace, as opposed to any of the other occupants of the car, possessed drugs. Id. at 302.

The reasoning in Wallace does not persuade us because the facts before us are materially different. In Wallace, the defendant was the third of five passengers to be searched, and the police did not search the car until after the passengers had been searched. In this case, however,

the officers first searched the car and the other passengers. By the time they searched Whitehead, he was the only remaining possible source of the drug scent.

Instead, we find the Tenth Circuit's decision in United States v. Anchondo, 156 F.3d 1043 (10th Cir. 1998), persuasive. There, a drug-detecting dog alerted on a car driven by Anchondo. Id. at 1044. Based on the alert, border-patrol agents searched the car, but did not find any contraband. Id. They then asked Anchondo and his passenger "if they had any personal amounts of contraband in the vehicle." Id. Anchondo "responded by stating: 'you're not going to find anything in that vehicle.'" Id. The agents then searched Anchondo and found four packages of cocaine attached to his body. Id.

On these facts, the Tenth Circuit held that the agents had probable cause to search Anchondo, reasoning that the "fruitless search of the car diminished the probability of contraband being in the car [and] increased the chances that whatever the dog had alerted to was on [Anchondo or his passenger's] bodies." Id. at 1045; see also State v. Griffin, 949 So. 2d 309, 314 (Fla. App. 2007) (holding that probable cause existed to search the sole occupant of a car when officers searched the car after a drug-detecting dog alerted to the presence of narcotics and the subsequent search of the car yielded no contraband because "by the process of elimination, probable cause then existed to search [Griffin]").

In this case, the officers had probable cause to search the car following Xanto's alert. And, by the time the officers searched Whitehead, they had probable cause to search his person through the process of elimination.[3] Each fruitless search – of the car and of the other occupants of the car –

---

[3] Whitehead argues that we should ignore the previous fruitless searches because the officers did not have a particularized probable cause to search the first, second or third occupants of the car. We need not address this argument because Whitehead lacks standing to challenge those searches. See Rakas v. Illinois, 439 U.S. 128, 133-34 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."). Further, while the officers may have made the decision to search Whitehead prior to actually searching the other occupants, we assess the existence of probable cause at the time the search

increased the likelihood that Whitehead possessed the odorous contraband detected by Xanto's trained nose. While it may have been more a result of luck rather than a profound understanding of the Fourth Amendment, we hold that by the time the officers searched Whitehead they possessed the necessary probable cause to justify the search. Accordingly, the trial court did not err in refusing to suppress the evidence.

## III. CONCLUSION

For the foregoing reasons, we affirm Whitehead's conviction.

Affirmed.

---

was conducted. Cf. United States v. Steele, 195 F. Supp. 2d 202, 206 (D. Me. 2002) ("Although Defendant argues that Officer Wilson's decision to search him was made before the discovery of the pocketknife, the court assesses the information available to the officers at the time the frisk was actually performed.").