FILED

Dec 21 2016, 7:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

William T. Myers
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Will Thomas, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 21, 2016 <br><br> Court of Appeals Case No. <br> 27A02-1602-CR-374 <br><br> Appeal from the Grant Superior Court <br><br> The Honorable Jeffrey D. Todd, Judge <br><br> Trial Court Cause No. <br> 27D01-1404-FA-5 |

**Bailey, Judge.**

# Case Summary

Will Thomas ("Thomas") was convicted of Dealing in a Narcotic Drug, as a Class A felony.[1]  He now appeals.

We reverse.

# Issue

Thomas raises one issue for our review, which we restate as whether the trial court abused its discretion when it admitted into evidence heroin recovered from Thomas after a warrantless arrest following a traffic stop.

# Facts and Procedural History

On April 7, 2014, acting on information obtained from an informant, a joint task force of officers from the City of Marion Police Department and the Grant County Sheriff's Office engaged in surveillance of a white Dodge Caravan with temporary Illinois license plates.  The vehicle was located at a hotel in Marion.

Around 3:30 p.m., Byron Christmas ("Christmas") and Thomas, who matched physical descriptions provided by the informant, got in the van and left the parking lot of the hotel.  Detective Mark Stefanatos ("Detective Stefanatos"),

---

[1] Ind. Code § 35-48-4-1(a)(2) & (b)(1).  The Indiana General Assembly has enacted numerous revisions to Indiana's criminal statutes since 2013; we refer throughout to the statutes in effect when Thomas was charged.

one of the officers conducting surveillance, observed the van change lanes without properly signaling a lane change, and requested that a uniformed officer, Joseph Martin ("Officer Martin"), conduct a traffic stop.

[6] Officer Martin conducted a traffic stop of the van. Christmas was driving the van, and Thomas was seated in the front passenger's seat. Detective Stefanatos came to the traffic stop, as did a police K9 handler, Grant County Sheriff's Deputy Matt Sneed ("Deputy Sneed"). Officer Martin spoke with Christmas while Detective Stefanatos spoke with Thomas. Each officer attempted to verify the men's identity and reason for their travel through Marion.

[7] During their conversation, Officer Martin obtained Christmas's written permission to search the van. Upon obtaining Christmas's permission to search, Deputy Sneed had his police dog begin to sniff the vehicle, starting along the driver's side from the rear bumper and moving toward the front of the car. The dog, which was trained in narcotics detection and suspect apprehension, alerted next to the driver's door.

[8] After the police dog alerted to the presence of narcotics, the officers had Christmas and Thomas exit the vehicle and conducted a pat-down search for officer safety. Christmas and Thomas were each asked whether they would consent to a strip search at the police station, and were informed that officers would seek a search warrant if they declined to consent. Christmas agreed, and Thomas declined.

[9] Christmas, whose driving privileges had been suspended in Illinois, was transported to the Grant County Jail, where he was searched. The search disclosed $750 in cash but no narcotics.

[10] Thomas was transported to the Marion Police Department and placed in an interview room. While seated in the interview room, officers observed Thomas take something from a jacket pocket and put it into his mouth. Thomas refused to open his mouth, and police forced his mouth open. The officers retrieved a small plastic baggie with 8.5 grams of a gray, crumbly, rock-like substance that would later be identified as heroin.

[11] On April 14, 2014, the State charged Thomas with Dealing in a Narcotic Drug and Battery, as a Class B misdemeanor.[2] A jury trial was conducted on November 30 and December 1, 2015. At the conclusion of the trial, the jury found Thomas guilty of Dealing in a Narcotic Drug and not guilty of Battery.

[12] This appeal ensued.

# Discussion and Decision

## Standard of Review

[13] Thomas challenges his conviction because, he argues, the trial court erred when it did not grant his motion to suppress evidence obtained from a search of his

---

[2] I.C. § 35-42-2-1(a).

person at the Marion Police Department. However, Thomas's case proceeded to trial, and is instead a challenge to the trial court's ruling to admit evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).

> The trial court has broad discretion to rule on the admissibility of evidence. *Id.* at 259-60. We review its rulings "for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* But when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo. *Kelly v. State,* 997 N.E.2d 1045, 1050 (Ind. 2013).

*Id.* at 40–41 (Ind. 2014) (footnote omitted).

# Analysis

[14] Thomas argues on appeal that police lacked the requisite probable cause to arrest, detain, move, and subsequently search him after the traffic stop. Thomas does not challenge the legitimacy of the traffic stop. Rather, he contends that police detention and transportation of him to a police station in order to conduct a strip search was not supported by probable cause and was unreasonable under the totality of the circumstances. Evidence obtained from

the detention, Thomas argues, should have been barred from admission into evidence by the exclusionary rule.[3]

The Fourth Amendment to the United States Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." The U.S. Supreme Court has held that even when a seizure is initiated with probable cause, the seizure may violate the Fourth Amendment "if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). One way in which this may occur is if a seizure "is prolonged beyond the time reasonably required to complete" a stop justified "solely by the interest in issuing a warning ticket to the driver." *Id.*

In *Caballes*, the Court held that a dog sniff conducted during a stop for a speeding ticket was not an unlawful seizure because "a dog sniff would not change the character" of a lawfully-initiated and conducted traffic stop "unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy." *Id.* at 408. Yet, the Court held, dog sniffs do not in themselves infringe such interests. *Id.* Moreover, both this Court and the Indiana Supreme Court have held that dog sniffs are sufficient to establish probable cause. *State v. Hobbs*, 933 N.E.2d 1281, 1286 (Ind. 2010) (citing *Neuhoff v. State*, 708 N.E.2d

---

[3] Thomas challenges his conviction on both federal and Indiana constitutional grounds. Because we reverse on Fourth Amendment grounds, we do not address the Indiana constitutional question.

889, 891 (Ind. Ct. App. 1999)); *Perez v. State*, 981 N.E.2d 1242, 1251 (Ind. Ct. App. 2013) (citing *Neuhoff*, *supra*), *trans. denied*.

[17] Thus, police had probable cause to search the vehicle—and that search was further consented to by Christmas, who was operating the vehicle at the time of the traffic stop. At trial, Detective Stefanatos testified, "I was told directly by Deputy Matt Sneed … that his dog had indicated the presence of the odor of narcotics inside the vehicle." (Tr. at 35.) The following exchange ensued:

> Q. Did you then search the vehicle?
>
> A. Yes.
>
> Q. Did you find anything inside the vehicle?
>
> A. No we did not.

(Tr. at 35.)

[18] With police having failed to find narcotics in the vehicle, despite the dog sniff giving rise to probable cause for the vehicle search, Thomas argues that, under the totality of the circumstances, the decision to arrest him and transport him to the police station for a strip search was unreasonable. The State argues that police had probable cause to search not only the van but also Christmas and Thomas as a result of the dog sniff, and that transporting Thomas to the police station to do so was not a violation of Thomas's constitutional rights.

[19] Without a warrant, "an arrest or detention for more than a short period" must be justified by probable cause. *Overstreet v. State*, 724 N.E.2d 661, 662 (Ind. Ct. App. 2000) (citing *Woods v. State*, 547 N.E.2d 772, 778 (Ind. 1989)), *trans. denied*. Probable cause for an arrest exists when the facts and circumstances within the knowledge of law enforcement officers are sufficient to warrant belief by a person of reasonable caution that an offense has been committed and the person to be arrested has committed it. *Id.* (citing *Brinegar v. United States*, 388 U.S. 160, 175-76 (1949)). "The amount of evidence necessary to meet the probable cause requirement for a warrantless arrest is determined on a case-by-case basis." *Griffith v. State*, 788 N.E.2d 835, 840 (Ind. 2003).

[20] The United States Supreme Court has "distinguished between the search of a vehicle and a personal search 'because of the unique, significantly heightened protection afforded against searches of one's person.'" *United States v. Moore*, 390 Fed. Appx. 503, 507 (6th Cir. 2010) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999)). This distinction rests upon a longstanding rule that the existence of probable cause to search a vehicle does not mean that "a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *United States v. Di Re*, 332 U.S. 581, 587 (1948). Thus, in *Di Re*, the Court held as insufficient to support a search of Di Re's person his "mere presence in a suspected car." *Id.* at 588. Similarly, in *Ybarra v. Illinois*, the Supreme Court held that a search and arrest of Ybarra was unconstitutional, despite his presence at a location for which a warrant had been issued and where there was probable cause to believe that other persons

present were engaged in criminal activity. 444 U.S. 85, 90-91 (1979). The Court's holding in *Ybarra*, which relied upon *Di Re*, rested upon the basic principle that probable cause must be particularized to the individual to be searched or arrested. *Id.* at 91, 94-95 (citing *Di Re*, 332 U.S. at 583-87).

[21] Neither party's briefs cite to prior Indiana cases with facts that are indistinguishable from those in this case, nor has this Court found such Indiana cases. Several other jurisdictions within the United States have, however, confronted similar issues where a dog sniff of a vehicle gave rise to probable cause to search the vehicle and, when the search recovered no drugs, police searched the vehicle's occupants and recovered drugs from an occupant.

[22] In *Ohio v. Kay*, No. 09CA0018, 2009 WL 2918523 (Ohio Ct. App. Sept. 14, 2009), the Ohio Court of Appeals held after an appeal from an order suppressing evidence that police lacked probable cause to detain and search Kay. Kay was the front-seat passenger in a vehicle leaving a "known drug house." Kay, 2009 WL 2918523 at *5. Police stopped the vehicle, and a dog sniff indicated the presence of illegal drugs in the vehicle, but no drugs were found upon a consensual search of the vehicle. *Kay*, 2009 WL 2918523 at *1, *5. The court observed that Kay was cooperative during the dog's sniff of the vehicle, complied with police officers' instructions not to leave the scene, and made no furtive movements. *Kay*, 2009 WL 2918523 at *5. The court reasoned, "[police] possessed probable cause to believe drugs would be found in the vehicle," but they had no specific reason to believe drugs were on Kay's person. *Kay*, 2009 WL 2918523 at *4. "A negative search of the vehicle does

not necessitate the conclusion the drugs must therefore be with one of the occupants of the vehicle," and that it was equally valid to conclude that the dog alerted to "the residual odor of narcotics from past occupants." *Id.* Absent probable cause specific to Kay, police lacked authority to search him, and accordingly the drugs recovered from Kay's person were subject to suppression. Virginia and North Carolina courts have reached similar conclusions involving vehicles with more than one passenger, *Whitehead v. Virginia*, 278 Va. 300, 683 S.E.2d 299 (Va. 2009), and a vehicle whose immediately prior occupants were standing next to the car when police encountered them. *North Carolina v. Smith*, 222 N.C. App. 253, 729 S.E.2d 120 (N.C. Ct. App. 2012).

[23] All three cases expressly rely on *Di Re*, *Ybarra*, or both, and reject the reasoning of a federal case, *United States v. Anchondo*, 156 F.3d 1043 (10th Cir. 1998), that supports the State's position here that probable cause to search the vehicle in which Thomas was traveling was sufficient to permit his detention and transportation for a strip search. *Smith*, 729 N.E.2d at 259-61 (following *Whitehead*); *Whitehead*, 683 S.E.2d at 315; *Kay*, 2009 WL 2918523 at *5. In *Anchondo*, a dog sniff indicated the presence of narcotics in a vehicle in which Anchondo and another man, Garcia, were traveling, but no contraband was found in the vehicle after a search. A second dog sniff again yielded an indication that drugs were in the car and border patrol agents performed pat-down searches of Anchondo and Garcia. Patting down Anchondo, one of the agents felt a hard object near Anchondo's waistband that he believed to be a

handgun but which turned out to be four packages of cocaine strapped to Anchondo's body.

[24] Relying largely on its own precedent, the federal Tenth Circuit held that the dog sniffs' indications of the presence of narcotics were sufficient to give rise to probable cause to search the vehicle and its occupants: "A canine alert provides the probable cause necessary for searches and seizures." *Id.* at 1045 (citing *United States v. Ludwig*, 10 F.3d 1523, 1527 (10th Cir. 1993)). Noting that the dog alerted twice, and expressly applying its precedent in *Ludwig*, the Tenth Circuit reasoned in *Anchondo*, "[e]ven if the subsequent fruitless search of the car diminished the probability of contraband being in the car, it increased the chances that whatever the dog had alerted to was on the defendants' bodies." *Id.* at 1045; *but cf. Whitehead*, 683 S.E.2d at 314-15 (holding that, after a drug dog alerted at a vehicle, fruitless searches of a car and three occupants did not, by process of elimination, allow a physical search of a fourth occupant).

[25] We think the rationale of *Kay*, *Whitehead*, and *Smith* to be the more persuasive one. Probable cause is to be particularized to the premises, vehicle, or person to be searched. Here, police had information from an informant concerning two unnamed men who would be traveling through Marion. A concededly constitutionally permissible traffic stop was initiated. The two men in the van, Thomas and Christmas, were nervous upon being stopped, but the record is devoid of any mention that they appeared to be hiding anything from police. A concededly constitutional dog sniff at the driver's door indicated the presence of drugs in the vehicle, but a search of the vehicle was unavailing. The dog sniff

did not provide specific information as to either Thomas or Christmas, and police did not use the dog to sniff either of the two men's bodies.

[26] In recognition of the Fourth Amendment's "significantly heightened protection of … one's person," *Houghton*, 526 U.S. at 301, we do not think that the Fourth Amendment authorizes a process-of-elimination practice absent information particularized to the individuals under suspicion. That Christmas consented to a search did not mean that Thomas was required to do likewise. Rather, police simply engaged in a kind of process of elimination: they could not find drugs in the car, and so they assumed the drugs must have been on either Christmas's or Thomas's person. Refusing to consent to a personal body search does not create probable cause to believe he was the individual holding the drugs. And while, in many situations, any of a number of a vehicle's occupants may properly be considered to exercise dominion over contraband in the vehicle, *Maryland v. Pringle*, 540 U.S. 366, 372 (2003), that rationale avails when contraband is found in the vehicle. Here, there was no contraband in the vehicle, and under circumstances like these the probable cause arising from a drug dog's alert to a larger area like a car does not permit a fishing expedition into the pockets of each of the car's occupants.

[27] The State suggests that the police officers' detention and transportation of Thomas to jail was reasonable, even in the absence of probable cause to effect an arrest. The State here directs us to *United States v. Bullock*, in which a defendant was handcuffed for officer safety, placed in a squad car, and transported to a nearby residence from which he had recently left and

concerning which police had information of drug activity. 632 F.3d 1004, 1015-16 (7th Cir. 2011). Yet *Bullock* is readily distinguishable from this case. Though police detained Bullock, the court observed that officers did not "attempt[] to exploit the situation" through interrogation or "requesting to search his belongings," *id.* at 1016, and "officers would have inevitably arrested him after the residence search." *Id.* at 1017. In the instant case, police requested to search Thomas and, upon his refusal, handcuffed him and transported him to a police station for the express purpose of performing a strip search. A search of the car yielded no drugs, and a search of the hotel room from which Thomas had recently departed also yielded no contraband. And we have concluded that there was no probable cause to search Thomas; obtaining a warrant was not inevitable, and there was no inevitability of arrest as in *Bullock* after a search of locations associated with Thomas.

[28] The State also suggests that being required to strip search Thomas alongside the road or forego a search altogether puts it in a "Catch 22." While strip searches are concededly invasive and their public conduct is problematic, the State articulates no basis upon which one may have been conducted. There was no probable cause to arrest or search Thomas. This obviates the need for a strip search: "the indignity and personal invasion necessarily accompanying a strip search is simply not reasonable without the reasonable suspicion that weapons or contraband *may be introduced into the jail*." *Edwards v. State*, 759 N.E.2d 626, 630 (Ind. 2001) (emphasis added). But a strip search was not inevitable but for

the unlawful arrest of Thomas, and we decline the State's invitation to broaden the scope of nonconsensual, lawful strip searches in this manner.

[29] From here, the analysis is straightforward. Generally, evidence obtained pursuant to an unlawful seizure must be excluded under the fruit of the poisonous tree doctrine. *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013). The exclusionary rule bars evidence obtained directly by an illegal search or seizure. *Id.* "The defendant must first prove the Fourth Amendment violation and that the evidence was the 'fruit' of that search; the State must then show that the evidence must nevertheless be admitted." *Id.* We have already concluded that seizure of the heroin was the result of an unlawful detention; and the State articulates no situation in which the discovery of the heroin on Thomas's person was otherwise inevitable.

[30] In the absence of probable cause to detain Thomas, the police detention and transportation of Thomas to the Marion Police Department was unconstitutional. The drugs obtained from him after he had been transported were thus "fruit of the poisonous tree," and should have been excluded from evidence at trial. They were not excluded, and they would not have been found had Thomas not been detained. We accordingly conclude that the trial court abused its discretion when it did not exclude the heroin from evidence.

# Conclusion

Police violated Thomas's constitutional rights when they detained and transported him. The trial court erred when it did not exclude evidence obtained as a result of the detention. We accordingly reverse Thomas's conviction.

Reversed.

Najam, J., and May, J., concur.