OPINION
CLAY, Circuit Judge.
The government appeals the district court’s grant of Defendant Gary Moore’s motion to suppress crack cocaine that was found on his person following a traffic stop. Defendant has been charged with four drug-related charges, including conspiracy to distribute both cocaine base and cocaine in violation of 21 U.S.C. § 846 and two counts of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1). The district court granted the motion to suppress because the officers at the scene had no reasonable fear for their safety and did not have probable cause to effectuate a *504 search incident to arrest. For the following reasons, the district court’s grant of the motion to suppress is AFFIRMED.
BACKGROUND
Defendant was indicted in the Eastern District of Tennessee along with three co-conspirators for conspiracy to distribute and for distributing cocaine and cocaine base. Defendant moved to suppress the drugs seized from his person following a traffic stop. The traffic stop occurred after a police officer received word that a vehicle fitting the description of the car carrying Defendant and driven by Melissa Moore contained crack cocaine. The officer received permission from the car’s driver to search the car but failed to locate any drugs. He then decided to search Defendant’s person, seemingly as a last resort after spending nearly forty-three minutes at the scene of the traffic stop searching the vehicle.
The magistrate judge conducted an evi-dentiary hearing in connection with Defendant’s motion to' suppress at which the government’s only witness was Chattanooga Police Officer Robert Lewis. The magistrate judge denied the motion, and Defendant filed no objections. Subsequently, Defendant obtained new counsel, who filed a new motion to suppress the same drugs and a motion for reconsideration of the district court’s order adopting the magistrate judge’s Report and Recommendation. The magistrate judge granted the motion for reconsideration and consulted a video recording of the traffic stop in question that had not been submitted as an exhibit at the initial hearing. On September 29, 2008, 2008 WL 4981822, the magistrate judge, after reviewing the video recording, again recommended denying the motion to suppress.
Defendant objected to the magistrate judge’s Report and Recommendation, and prior to ruling on the suppression motion, the district court reviewed the video recording of the traffic stop where the challenged search occurred. The district court also reviewed the transcript from the suppression hearing, and found the following facts:
On September 27, 2007, Officer Robert Lewis of the Chattanooga police department was contacted “previously” by Detective Hixon and told that they were conducting surveillance on a silver Malibu and observed a drug transaction. Detective Hixon asked that the vehicle be stopped as it was believed that it contained ten ounces of crack cocaine. Officer Lewis saw the vehicle and observed it as it failed to stop at two successive stop signs. Officer Lewis activated his blue lights and stopped the vehicle. The driver was Melissa Moore and the defendant Gary Moore was the only passenger. Officer Lewis explained the reason for the stop to Ms. Moore and asked for her driver’s license, registration, and proof of insurance. He asked her to stand at the side of the road away from the traffic. Ms. Moore was visibly crying.
After checking Ms. Moore’s license, Officer Lewis asked her if she had any firearms, money or contraband in the car or on her person. Ms. Moore said she did not, and Officer Lewis asked if she would consent to a search of her vehicle. Ms. Moore agreed to the search. This exchange occurred about ten minutes after the stop.
Officer Lewis then approached the passenger, defendant Gary Moore, and asked him if he had a driver’s license because Ms. Moore seemed too upset to drive. He also asked the defendant to get out of the vehicle. The defendant produced his license, and Officer Lewis told him to stand with Ms. Moore be *505 tween the patrol car and Ms. Moore’s vehicle, out of the way of traffic. Officer Lewis testified that he thought it was unusual that the defendant seemed “overly friendly” while Ms. Moore was crying. Officer Lewis asked the defendant only once to keep his hands out of his pockets and asked him if he had any firearms, money or contraband on his person. The defendant pulled a roll of money ($425.00) from his front pants pocket. The roll was secured with a rubber band. As Officer Lewis walked away toward Ms. Moore’s vehicle, he told another officer standing with Ms. Moore that he had not “patted down” the defendant so the officer should keep an eye on him. This exchange took about two minutes.
For the next thirty-one minutes, the officers thoroughly searched the vehicle. During this time, the video shows the defendant and Ms. Moore standing in front of the patrol car. The court has reviewed the video several times and it does not appear that the defendant ever put his hands in his pockets or did anything suspicious. About twenty-seven minutes into the search, an officer (probably Officer Lewis) stated something to the effect: “I think I’m going to search him in a second — can’t hurt.[1]” Then, about four minutes later, an officer (again, probably Officer Lewis) said: “... go ahead and check him real quick.”
After searching the vehicle, the officers had not been able to find any controlled substances, firearms, or money, but the officers noticed that the carpeting was lifted up on the passenger side and that the lining of the back seat was held up with a safety pin. Officer Lewis approached the defendant and asked him once again if he had any of those items on his person. Again, the defendant said no. At' that point, Officer Lewis told the defendant to place his hands on the hood of the patrol car and to spread his legs. The defendant began to comply with Officer Lewis’s request, but then turned and tried to flee. After he was taken down only a few feet away, the crack cocaine was found in his pocket. He and Ms. Moore were arrested.
The government takes issue with two statements in this recitation of the facts. First, it argues that Officer Lewis asked Defendant not once, but twice, to keep his hands visible. The government also states that even though the district court found that Defendant did not put his hands in his pockets, Lewis testified that Defendant “continued to put his hands in his pockets” and “several times ... stuck his hands back in his pockets.” (Suppression Hr. Tr. 16, 21). Defendant admits that he stuck his hands in his pockets twice, but after reviewing the video recording of the traffic stop, we agree with the district court that Defendant did not have his hands in his pockets during the search of the vehicle.
Based on these facts, the district court granted the motion to suppress. The government filed a motion for reconsideration, which was denied. The government’s timely appeal followed.
DISCUSSION
“This court reviews a district court’s decision on a motion to suppress under two standards. ‘Findings of fact are upheld unless clearly erroneous, while conclusions of law are reviewed de novo.’ ” United States v. Jenkins, 396 F.3d 751, 757 (6th *506 Cir.2005) (quoting United States v. Leake, 95 F.3d 409, 416 (6th Cir.1996)). “This court views the evidence in the light most likely to support the district court’s decision.” United States v. McPhearson, 469 F.3d 518, 523 (6th Cir.2006) (internal quotation omitted). “A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” United States v. Blair, 524 F.3d 740, 747 (6th Cir.2008) (internal quotation omitted). Whether probable cause exists to arrest and detain a suspect generally is a question of law that we review de novo. See Moldowan v. City of Warren, 578 F.3d 351, 396 (6th Cir.2009).
As a preliminary matter, we acknowledge that traffic stops are often considered in the framework of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). “A concern for officer safety permits a variety of police responses in differing circumstances, including ordering a driver and passenger out of a car during a traffic stop, ... and conducting pat-down searches upon reasonable suspicion that they may be armed and dangerous.” United States v. Campbell, 549 F.3d 364, 372 (6th Cir.2008) (quoting Bennett v. City of Eastpointe, 410 F.3d 810, 822 (6th Cir.2005)). However, an officer is only allowed to pat-down a person in performing a Terry stop if he can “point to particular facts from which he reasonably inferred that the individual was armed and dangerous.” Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (holding search for drugs, not weapons, required probable cause, not merely a reasonable suspicion).
In this case, the district court rejected the officer’s claim that he was searching for weapons because the officer’s testimony that he suspected Defendant was armed and dangerous was inconsistent with the facts. The district court correctly found that “whatever reasonable concern for his safety Officer Lewis could articulate at the beginning of the stop dissipated during the nearly forty-three minutes he allowed the Defendant to sit in Ms. Moore’s vehicle and stand along the roadside during the search of the vehicle.” United States v. Moore, No. 08-CR-16, 2008 WL 4981704, at *3 (E.D.Tenn. Nov.19, 2008). The government does not contest this finding on appeal, and it was uncontested that there was no search or pat-down of Defendant during the forty-three minute interval the officers questioned Defendant and searched the car.
Because there was no Terry stop search, the search was valid only if the officer had probable cause to believe that Defendant had drugs at the time of the search. “For probable cause to exist, the facts and circumstances within the officers’ knowledge must be sufficient to warrant a man of reasonable caution to believe that an offense had been, was being, or was about to be committed.” Fox v. DeSoto, 489 F.3d 227, 236 (6th Cir.2007). “Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.” United States v. Pearce, 531 F.3d 374, 380-81 (6th Cir.2008) (quoting Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)).
A. Lack of Probable Cause for Search
Drugs were eventually found on Defendant following a search performed at the conclusion of a forty-minute traffic stop. According to the video, at 10:52 p.m., the officer approached Defendant and initiated an interaction that eventually led to the discovery of the drugs in Defendant’s possession less than a minute later. *507 When the officer initially approached Defendant at 10:52 p.m., he simply did not have probable cause to effectuate a search. Without citation to any case law involving similar facts, the government argues that the undisputed facts “considered in their totality, provide probable cause to believe that defendant was committing a criminal offense, specifically possessing drugs.” (Appellant’s Br. at 17). We disagree. Before Defendant’s futile attempt to flee from the officer, the government undoubtedly did not have probable cause to effectuate a search.
Supreme Court case law is clear that the standard for searching a car is very different than that of searching a passenger of a car. In allowing police officers to search a passenger’s belongings, the Court distinguished between the search of a vehicle and a personal search because of “the unique, significantly heightened protection afforded against searches of one’s person.” Wyoming v. Houghton, 526 U.S. 295, 301, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). This holding is based on a longstanding rule that probable cause to search a car does not mean that “a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled.” United States v. Di Re, 332 U.S. 581, 587, 68 S.Ct. 222, 92 L.Ed. 210 (1948).
In this case, no evidence in the record even suggests that Defendant was involved in the drug transaction that may have triggered Officer Lewis’ response. Officer Lewis’ testimony at the suppression hearing indicates that he had no specific suspicion of Defendant. He stopped the car because it ran two stop signs, but his full testimony on the car’s link to drug activity stated:
I had been contacted just previously, I think, by Detective Hixon, who also works for us. He stated that they had just, or I learned that they were doing surveillance on a vehicle that they’d just done a drug transaction with and that they were surveilling the vehicle and they wanted the vehicle stopped. It was my understanding that there was around 10 ounces of crack cocaine hidden inside the vehicle.
(Suppression Hr. Tr. at 22). No evidence provided to Officer Lewis tied Defendant directly to the drugs, and even if it were assumed that drugs were in the car, they were no more likely to be possessed by Defendant than Ms. Moore. This one tip from another officer without a clear temporal description and without constant surveillance of the subject vehicle may not have even been sufficient to provide probable cause to search the car. The search of the car was permissible because Ms. Moore consented to the search, but the government never received consent to search Defendant’s person and did not attempt to conduct a timely Terry search following the traffic stop; it certainly did not have the probable cause necessary to overcome “the unique, significantly heightened protection afforded against searches of one’s person.” Houghton, 526 U.S. at 301, 119 S.Ct. 1297. The government acknowledges the holding in Di Re but argues that when no drugs were found in the car, the likelihood that drugs would be found on Defendant was increased. For support, the government relies on a Tenth Circuit case, United States v. Anchando, 156 F.3d 1043 (10th Cir.1998). In that case, a search of the person was allowed following an unsuccessful search of the car. The crucial difference, however, is that the search of the car was triggered by a drug detection dog. The Tenth Circuit considers a canine alert probable cause for search and seizures. Once the dog had highlighted the presence of drugs, the lack of drugs in the car, “increased the chances that whatever the dog' had alerted to was *508 on the defendants’ bodies.” Id. at 1045. In the instant case, no drug dog was present, and the testimony does not suggest that Defendant had been under constant surveillance after another officer viewed a similar car participating in a drug transaction. Therefore, the officer could not be certain that he had stopped the car observed during the drug transaction or that drugs were even in the car.
Furthermore, Officer Lewis’ testimony regarding his on-the-scene observations is insufficient to provide probable cause that Defendant possessed drugs. Officer Lewis testified that Defendant and Ms. Moore asked directions to a mall that was closed, that Ms. Moore was crying but Defendant was “overly-friendly,” that Defendant had $425 in a rubber band, and that Defendant put his hands in his pockets. Such relatively benign behavior and the tip from another officer that failed to provide any information about Defendant himself certainly did not provide the probable cause for an arrest.
In addition, the government argues that the district court made several “clearly erroneous” factual determinations, but these alleged errors were either immaterial or technically not errors. Specifically, the government finds clearly erroneous (a) the determination that Lewis only asked Defendant once to take his hands out of his pockets; and (b) the finding that Defendant did not put his hands in his pockets. Even if the government were correct that the district court erred in these two instances, any alleged error is irrelevant to the probable cause determination. In fact, Lewis told Defendant twice, not once, to take his hands out of his pockets. The two admonitions from Lewis occurred about a minute apart and fully thirty-two minutes before the actual search. That minor er.ror had no impact on the district court’s probable cause analysis.
The district court’s contention that Defendant did not put his hands in his pocket was not clearly erroneous because the district court was referring to what occurred during the search of the vehicle. Defendant had put his hands in his pockets before the search of the vehicle began. Even if the district court’s determination were incorrect, the. fact Defendant put his hands in his pockets twice does not contribute to a probable cause determination that he had drugs. The number of times Defendant reached into his pockets would perhaps be relevant had the government continued to press its argument that the search was permissible because the officer had a reasonable fear for his safety. When pulled over by the police, Defendant had ample opportunity to put drugs into his pockets before the police officer got to the car, and subsequently putting his hands into his pockets on two occasions does not in any way increase the likelihood that he illegally possessed drugs. The government offers no persuasive reason why the Defendant putting his hands in his pockets would increase the likelihood that he had drugs on his person. These two alleged factual errors should have had no cognizable effect on the probable cause analysis.
B. Propriety of Search in the Absence of Probable Cause
The government contends that, even if these facts did not support a finding of probable cause when Officer Lewis approached Defendant to conduct a search of Defendant’s person, Defendant’s attempt to run away provided the necessary probable cause to allow for a search. “Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.” Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Arguably, the *509 attempt to flee plus the other indications that Defendant could have had drugs might create the necessary probable cause to allow for an arrest and search incident to arrest. The district court did not reach this issue because it reasoned that the search had already commenced before Defendant attempted to flee. The district court found that “defendant’s attempted flight occurred after the officer tried to search him” and further held that evidence “obtained after the officers began to search cannot be used later to justify the search.” (Order on Mot. for Reconsideration at 2). Since “the fruits” of a search incident to arrest cannot be used to sustain probable cause, United States v. Montgomery, 377 F.3d 582, 586 (6th Cir.2004), the question of whether the search had begun before Defendant tried to run therefore becomes the crucial question to be resolved.
The government argues that the district court made an erroneous factual finding by holding that Defendant’s attempt to flee occurred after the search had commenced. It argues that: “Because defendant’s flight preceded any frisk or search, the district court erred by not considering it as a factor contributing to probable cause to arrest and search defendant.” (Appellant’s Br. at 20). If the determination were purely a factual determination, the district court’s judgment would easily be upheld as not clearly erroneous. The government, however, has actually misstated the standard of review in Defendant’s favor. “In reviewing a decision on a suppression issue, we review the lower court’s findings of fact for clear error and its conclusions of law de novo. ” United States v. Salgado, 250 F.3d 438, 455 (6th Cir.2001). We accept the district court’s factual determinations unless they are clearly erroneous and then make a de novo determination of whether those facts mean that a search had occurred. Id. (accepting the district court’s factual findings as not clearly erroneous but reviewing de novo the legal determination that the insertion of a key into a lock was not the beginning of a search).
Even under the de novo standard, the district court was correct that the search began before Defendant attempted to run away. While the officer had yet to physically reach into Defendant’s pockets, he had physically placed Defendant next to a car and told him to spread his legs. He also had placed his hand on Defendant’s side. He motioned for another officer to assist, and Defendant then attempted to run away, never escaping the officer and quickly being corralled by a number of officers. We agree with the district court that, as a matter of law, the search began when the officer physically positioned Defendant on the hood of a police car by grabbing his shirt, instructed him to spread his legs, and then physically touched him on his side, presumably in an attempt to uncover contraband or a weapon. Officer Lewis’ intent to search was apparent, and the physical contact clearly indicates that the search had begun. “Before [an officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so.” Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).[2] In this case, Offi *510 cer Lewis lacked the requisite probable cause to begin the search when he placed a hand on Defendant. While the drugs were only recovered after Defendant attempted to flee, the search that led to the discovery of the drugs began before the officers had probable cause, and the evidence was therefore properly suppressed. See id. at 63, 88 S.Ct. 1889 (holding that it is “axiomatic that an incident search may not precede an arrest and serve as part of its justification”). The dissent’s repeated fixation on the use of the term “attempted search” obscures the fact that the district court clearly held that the search began before Defendant attempted to flee. “The court finds that the defendant’s attempted flight occurred after the officer tried to search him. Evidence obtained after the officers began to search cannot be used to later justify the search.” United States v. Moore, No. 08-CR-16, 2009 WL 73148, at *1 (E.D.Tenn. Jan.6, 2009). The use of the term “attempt” elsewhere in the opinion only implies that the search was not completed, not that it was not begun.
We acknowledge that Defendant’s attempt to flee after the search began may have implications for the probable cause analysis, but those implications were never properly raised by the government before this Court. While the government referenced Defendant’s flight as a factor in the probable cause analysis, it failed to properly make any argument that Defendant’s attempt to break free from the officer’s grip could turn an unconstitutional search into a constitutional search.[3] Defendant’s attempt to resist the search raises a host of complicated issues including whether Defendant’s lack of cooperation with the search constituted a crime, whether Defendant should have been allowed to depart the scene prior to the illegal search, and what a person’s obligations are to submit to unconstitutional searches. These arguments have not been properly raised or briefed before this Court, and we decline to consider them.
The dissent.misapprehends our position in declining to reach this issue. We decline to reach the issue because the government, while referencing Defendant’s flight, never discussed whether an unlawful search could turn lawful if Defendant attempted to flee. The government’s failure to raise the issue is apparent based on the dissent’s own analysis of the issue. The dissent finds for the government on the issue by relying on five separate cases. Not one of those cases appears in the government’s brief to this court. The government, as appellant in this case, could have located the cases found by the dissent and therefore allowed Defendant, as appel-lee, an opportunity to respond. The dissent argues that “we have not addressed this precise issue in a published decision,” but appears to believe that such standard *511 operating procedure as considering reasoned arguments by both parties is unnecessary to answering unresolved questions. Actually, the dissent seems to prefer to derive its legal position from opinions from the Eighth Circuit and several unpublished opinions in this Circuit.[4] Contrary to the dissent’s approach, we decline to decide a legal issue never briefed or argued before this Court.[5]
To summarize, our holding is two-fold. First, Officer Lewis did not have probable cause to search Defendant’s person based on the tip that a similarly described car might be transporting drugs and based on Defendant’s behavior before and during the search of the car. Additionally, we hold that the search of Defendant began in the absence of probable cause before he attempted to flee. Consequently, the officer did not have probable cause to search Defendant at the time that the- actual search began.
CONCLUSION
For the foregoing reasons, the district court’s grant of Defendant’s motion to suppress is AFFIRMED.

-. The government states in its briefs before this Court that Lewis said he was going to search him "to be safe” rather than "in a second.” After reviewing the recording, we agree with the district court that Lewis states "in a second.”

. The dissent cites language from a number of irrelevant cases to create the illusion that the officer's conduct could not constitute a search. First the dissent cites a series of cases that all deal with searches of objects rather than searches of persons. (Dissent at 515-16). Then, the dissent cites a string of cases stemming from the Supreme Court’s decision in United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). (Dissent at 516-17). The Supreme Court in Dionisio found that the Fourth Amendment *510 provided no protection for "what a person knowingly exposes to the public ... The physical characteristics of a person’s voice, its tone and manner, as oppose to the content of a specific conversation are constantly exposed to the public. Like a man’s facial characteristics, or handwriting, his voice is repeatedly produced for others to hear.” 410 U.S. at 14, 93 S.Ct. 764 (citation and quotation omitted). In these cases, the only evidence being sought consists of observable physical characteristics, not, by way of example, what a citizen might be intentionally concealing inside his clothing. None of these cases have any relevance to an officer’s conduct in searching for drugs in a roadside stop.

. The district court also declined to consider this argument because it was not made until the government’s motion for reconsideration of the district court’s grant of Defendant's motion to suppress. In that motion, the government raised for the first time T.C.A. § 39-16-602, which makes it an offense to stop a law enforcement officer from searching a person. That statute was never referenced before the magistrate judge or before this Court.

. In one of those unpublished opinions, United States v. Baldwin, 114 Fed.Appx. 675, 687 (6th Cir.2004), the dissent relies on language from that case's dissent and is forced to distinguish the majority opinion. The need to distinguish Baldwin underscores the complexity of the issue and bolsters our decision to decline to rule on this issue without proper briefing and argument.

. The dissent appears to understand this concept when it declines to consider whether Defendant was improperly seized because Defendant "makes no argument that he was unlawfully seized.” (Dissent at 517).