# CIRCUIT COURT OF THE CITY OF STAUNTON

Commonwealth of Virginia

v.

Jeremy Morrison Turner

April 9, 2012

Case No. CR12-2

By Judge Humes J. Franklin, Jr.

This letter is to give the reasons of the Court's decision regarding Defendant Jeremy Morrison Turner's Motion to Suppress. Turner asks the Court to exclude the evidence found on his person immediately prior to his arrest, as well as certain statements he made while in custody. The search occurred after a police officer, Brown, stopped Turner for driving a vehicle with an expired safety inspection decal. Perceiving Turner as acting "nervously," Brown called for a canine unit to perform a perimeter "sniff" of Turner's vehicle. A second officer, Metje, arrived with the dog and removed Turner from the vehicle. The dog then performed the sniff and alerted to the presence of drug odors in or about the vehicle. Then, prior to conducting a search of the vehicle, Brown searched Turner's person and found items that form the basis of the charges against him.

Turner argues that the items found on his person should be suppressed for two reasons: (1) at the time he was searched, the police had no particularized probable cause to conduct the search of his person; and (2) the initial request that Turner exit the vehicle constituted an illegal seizure under the Fourth Amendment to the United States Constitution. Further,

Turner argues that any statements he subsequently made while in custody should be excluded as fruit of the illegal search. After carefully considering the oral and briefed arguments, as well as the relevant authority, I am now prepared to rule.

## Fourth Amendment Analysis

At issue is whether Brown's conduct violated Turner's rights as provided by the Fourth Amendment to the United States Constitution and Article I, § 10, of the Constitution of Virginia. The Virginia requirements, under our constitution and the statutes implementing the constitutional provision, are "substantially the same as those contained in the Fourth Amendment." *Lowe v. Commonwealth*, 230 Va. 346, 348, n. 1, 337 S.E.2d 273 (1985). Therefore, we need only review the standards that have been applied in resolving challenges under the Fourth Amendment.

First, I dispose of Turner's contention that his removal from his vehicle constituted an unlawful seizure in violation of the Fourth Amendment. The United States Supreme Court has held generally that the police may lawfully require a driver to exit the vehicle in the course of a routine traffic stop. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977) ("We hold . . . that, once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."). Indeed, as the Commonwealth notes in its brief, this general rule has been extended to include not only the driver of the vehicle but also its passengers. *See Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997) (extending the rationale of *Mimms* to include vehicle passengers). Therefore, the request that Turner exit the vehicle (or the "order" that he do so, as it may have been perceived by Turner) was not an unlawful seizure in violation of the Fourth Amendment.

To support his other contention, that the search of his person was not supported by particularized probable cause, Turner relies almost exclusively on our Supreme Court's decision in *Whitehead v. Commonwealth*, 278 Va. 300, 683 S.E.2d 299 (2009). Whitehead was one of four individuals in a car pulled over for a traffic violation. While all four individuals remained in the car, a trained narcotics dog alerted officers to the possible presence of illegal drugs in the vehicle. The police then removed all four individuals from the vehicle and searched it. Finding nothing in the vehicle, the police then searched each of the individuals. Though nothing was found on the first three individuals, the police searched Whitehead last and found contraband on his person. The Commonwealth argued that it had probable cause to search Whitehead based on the dog's indication "that contraband was present *somewhere*, and after no contraband was found in the vehicle or on the other three occupants, that *somewhere* had to be on Whitehead's

person." *Id.* at 314 (emphasis in original). The Court rejected this argument: "While the fruitless search of the vehicle and the other occupants increased the likelihood that the contraband . . . was on Whitehead's person, it also increased the likelihood that the dog alerted to the odor of contraband no longer present in the vehicle." *Id.* In other words, the Court conceded that the preceding fruitless searches of the vehicle and the other occupants created a "strong suspicion" that Whitehead possessed contraband on his person, but reiterated that "probable cause requires more than a strong suspicion." *Id.* (citing *Jones v. Commonwealth*, 277 Va. 171, 178, 670 S.E.2d 727 (2009)). The Court reversed both the Court of Appeals and the trial court and held that the search of Whitehead's person was unconstitutional.

The facts presently before me are somewhat different from those considered by the Supreme Court in *Whitehead*. Here, the defendant was the driver and sole occupant of the vehicle, whereas Whitehead was one of four occupants of the vehicle. Here, the dog-sniff was conducted after Turner had been removed from the vehicle, whereas in *Whitehead*, the occupants remained in the vehicle while the dog performed its sniff. Thus, while *Whitehead* provides some helpful principles, resolution of the present motion is a matter that, to my knowledge, is not directly governed by prior precedent.

The Fourth Amendment provides us with the following guarantees:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV. "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *Wilson v. Arkansas*, 514 U.S. 927, 931, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995). Of course, the naked standard that a search be "reasonable" is only marginally helpful; the reasonableness of a search or seizure must be founded on something "more than a subjective view regarding the acceptability of certain sorts of police conduct. . . ." *Chimel v. California*, 395 U.S. 752, 764-65, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). As Justice Frankfurter expressed it:

To say that the search must be reasonable is to require some criterion of reason. It is no guide at all either for a jury or for district judges or the police to say that an "unreasonable search" is forbidden — that the search must be reasonable. What is the test of reason, which makes a search reasonable? The test is the reason underlying and expressed by the Fourth Amendment: the history and the experience which it

embodies and the safeguards afforded by it against the evils to which it was a response.

*United States v. Rabinowitz,* 339 U.S. 56, 83, 70 S. Ct. 430, 94 L. Ed. 653 (1950) (Frankfurter, J., dissenting). Which is to say, the reasonableness of a search or seizure "must be viewed in the light of established Fourth Amendment principles." *Chimel,* 395 U.S. at 765.

Generally, warrantless searches are presumptively unreasonable. *See, e.g., Katz v. United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). However, the United States Supreme Court has carved a number of exceptions to this general rule and held that, under specific circumstances, a warrantless search is not *per se* unreasonable. *See, e.g., Chimel,* 395 U.S. at 762-63 (searches incident to arrest); *United States v. Ross,* 456 U.S. 798, 800, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982) (automobile searches); *United States v. Biswell,* 406 U.S. 311, 315-17, 92 S. Ct. 1593, 32 L. Ed. 2d 87 (1972) (searches of "pervasively regulated" businesses); *Camara v. Municipal Court of City and County of San Francisco,* 387 U.S. 523, 534-39, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967) (administrative searches); *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 298, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967) (exigent circumstances); *California v. Carney,* 471 U.S. 386, 390-94, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985) (mobile home searches); *Illinois v. Lafayette,* 462 U.S. 640, 648, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983) (inventory searches); *Almeida-Sanchez v. United States,* 413 U.S. 266, 272, 93 S. Ct. 2535, 37 L. Ed. 2d 596 (1973) (border searches). Outside of such exceptions, a warrantless search is reasonable only if the intrusion on the individual's Fourth Amendment interests is outweighed by legitimate governmental interests, and, in balancing these interests a court is to take account of all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself. *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 619, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989).

Probable cause to conduct a search exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jones v. Commonwealth,* 277 Va. 171, 178, 670 S.E.2d 727 (2009) (citing *United States v. Grubbs,* 547 U.S. 90, 95, 126 S. Ct. 1494, 164 L. Ed. 2d 195 (2006)). In the specific context of a narcotics detection dog's alert on a vehicle, our Supreme Court has held "a positive alert from a narcotics detection dog establishes probable cause to conduct a search of a vehicle. . . ." *Jones,* 277 Va. at 180. The question before me, however, is whether a positive alert from a narcotics detection dog performing a free air sniff of a vehicle establishes probable cause to conduct a search of the vehicle's sole occupant who was not in the vehicle at the time of the sniff. That is, although the positive alert from Metje's dog provided probable cause to search Turner's vehicle, the issue is whether the scope of that probable

cause extended as well to Turner's person. I agree with Turner that, under the principles enunciated in *Whitehead*, as well as firmly established federal Fourth Amendment jurisprudence, Brown lacked particularized probable cause to search Turner's person, and therefore the search violated the Fourth Amendment.

Under the automobile exception, the police may search an automobile without a warrant if they have probable cause to believe the vehicle contains contraband. *Ross*, 456 U.S. at 800. *See also Carroll v. United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 69 L. Ed. 543, T.D. 3686 (1925) ("[T]he true rule is that, if the search and seizure without a warrant are made upon probable cause, that is, upon a belief. . . that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid."). The justification for this exception, in part, is that "[o]ne has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects," and because "[i]t travels public thoroughfares where both its occupants and its contents are in plain view." *United States v. Chadwick*, 433 U.S. 1, 12, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977). By extension, the United States Supreme Court has noted that both passengers and drivers of vehicles "possess a reduced expectation of privacy with regard to the property that they transport in cars. . . ." *Wyoming v. Houghton*, 526 U.S. 295, 303, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999).

In contrast, the Supreme Court has described the "unique, significantly heightened protection afforded against searches of one's person." *Id.* In *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the Court stated: "Even a limited search of the outer clothing . . . constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Id.* at 24-25, 20 L. Ed. 2d at 908. Though this decision was not in the context of a Fourth Amendment challenge (it was a case pertaining to medical battery), the Court said in *Union Pacific Ry. v. Botsford*, 141 U.S. 250, 251, 11 S. Ct. 1000, 35 L. Ed. 734 (1891): "[N]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." In *United States v. Di Re*, 332 U.S. 581, 68 S. Ct. 222, 92 L. Ed. 210 (1948), the Court held that probable cause to search a car did not justify a search of a passenger. *Id.* at 587. In *Di Re*, an informant told an officer that he was to buy counterfeit gasoline coupons from an individual at a particular location. *Di Re*, 332 U.S. at 583. When the suspect arrived at the appointed place, officers approached her vehicle and found the informant in the rear seat and Di Re in the front passenger seat. *Id.* The informant possessed counterfeit coupons that he said he purchased from the suspect. *Id.* All three were arrested and searched, and the search of Di Re produced

additional contraband. *Id.* The government argued that the search of Di Re was justified as a search incident to arrest, or, in the alternative, as a search "incident to search of a vehicle reasonably believed to be carrying contraband." *Id.* at 583-84. The Court rejected the latter theory, holding: "We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." *Id.* at 587. Regarding the former theory, the Court held that Di Re's mere presence in a vehicle with other individuals who the government had probable cause to arrest was not enough to support a particularized probable cause to arrest Di Re. *Id.* at 592. Similarly, in *Ybarra v. Illinois*, 444 U.S. 85, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979), the Court held that a search warrant for a tavern and its bartender did not permit body searches of the bar's patrons:

> Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places.

*Id.* at 91. These cases, of which the latter two were important to our Supreme Court's analysis in *Whitehead*, implicitly turn on the unique and heightened protection afforded against searches of one's person. Thus, although the Court did not invoke this principle explicitly, we might assume that the "unique" and "heightened" protection against searches of one's person was critical to our Supreme Court's decision in *Whitehead*.

The Court noted in *Whitehead* that the search of Whitehead's person "was justified only as a search incident to a custodial arrest." *Whitehead*, 278 Va. at 306, n. 2. This conclusion is consistent with the United States Supreme Court's observation that a warrantless search is *per se* unreasonable unless it falls under one of the exceptions for warrantless searches, such as the exception for searches incident to a lawful arrest. Hence, the more basic question before me, as I understand it, is whether probable cause existed to arrest Turner. *See id.* ("Thus, the actual question is whether probable cause existed to arrest Whitehead."). This rationale is supported by the United States Supreme Court's decision in *Di Re*, where it considered whether the defendant was lawfully arrested because the ensuing search was permissible only if probable cause to arrest existed. *Id.* (citing *Di Re*, 332 U.S. at 587).

When framed in this way, it is clear that Brown did not have probable cause to arrest Turner. Unquestionably, the dog's alert to the possible presence of narcotics supplied probable cause to search the vehicle. But the mere alert, without more, was patently insufficient to support probable cause to arrest

Turner, *i.e.*, to warrant an officer "of reasonable caution to believe that an offense has been or is being committed." *McGhee v. Commonwealth*, 280 Va. 620, 624, 701 S.E.2d 58 (2010) (citing *Jones v. Commonwealth*, 279 Va. 52, 59, 688 S.E.2d 269). In *Whitehead*, the Supreme Court failed to find probable cause to arrest based on the dog's alert, even though Whitehead was in the vehicle when the dog alerted, which increased the ambiguity regarding whether the contraband was in the car or on Whitehead's person. Here, Turner was not in the car when the dog alerted to the possible presence of drugs in or on it. Although the alert provided probable cause to search the vehicle under established precedent, *Jones*, 277 Va. at 178, and although it certainly created some suspicion that Turner may be engaged in criminal conduct, *Whitehead*, 278 Va. at 314, this suspicion was simply not enough to support probable cause to arrest, which is a necessary predicate to a warrantless search of Turner, *id*. at 306, n. 2.

I do not think it necessary to do so in order to support this Court's decision, but I am impelled to note research suggesting that drug-sniffing dogs are susceptible to relatively high "error" rates. For instance, a study conducted by the *Chicago Tribune*, which involved three years of data, concluded that only 44 percent of alerts by dogs led to the discovery of drugs or paraphernalia. Dan Hinkel & Joe Mahr, "Tribune analysis: Drug-sniffing dogs in traffic stops often wrong," *Chicago Tribune*, January 6, 2011, http://articles.chicagotribune.com/2011-01-06/news/ct-met-canine-officers-20110105_1_drug-sniffing-dogs-alex-rothacker-drug-dog (last visited April 2, 2012). The high error rate may be attributable to dogs detecting the odor of contraband that is no longer present in the vehicle, and this possibility was raised by our Supreme Court in *Whitehead* as partial justification for its decision in that case. *Whitehead*, 278 Va. at 314. The high percentage of false-alerts certainly suggests that, although an alert may provide a basis to search a vehicle, where there is a reduced expectation of privacy, it would be dubious to extend this probable cause to a person, where there is a "heightened" and "unique" level of protection from unreasonable search and seizure.

Had Brown searched the vehicle and found evidence of criminal activity, he lawfully could have arrested Turner and conducted a search of Turner's person incident to that arrest. It is irrelevant that the search of Turner revealed evidence of a crime, because it "is axiomatic that an incident search may not precede an arrest and serve as part of its justification." *Smith v. Ohio*, 494 U.S. 541, 543, 110 S. Ct. 1288, 108 L. Ed. 2d 464 (1990).

The Commonwealth's arguments in defense of Brown's conduct are not persuasive. Though it does not expressly invoke the United States Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the Commonwealth hints at the possibility that the search of Turner was justified as a so-called "Terry search," which is another exception to the warrant requirement. The Commonwealth indicates that

Brown was motivated "in part to ensure that the defendant did not have any dangerous items on his person." Commonwealth's Reply, at 2. But the Commonwealth points to no facts that provide any support for a reasonable apprehension that Turner possessed any weapons or posed any physical threat. A search under *Terry* is justified only in the interest of officer safety, and the Commonwealth must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21. Moreover, the search "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby and may realistically be characterized as something less than a `full' search, even though it remains a serious intrusion." *Id.* at 26. This means that, generally, an officer may "pat down" the outer clothing of a suspect, but may not reach into pockets or under outer garments, unless the pat down reveals a weapon. *Id.* at 30. Brown, however, found no weapons, and the fruits of his search suggest that it was much more intrusive than that which the Supreme Court authorized in the interest of officer safety in *Terry*. Thus, under the facts presented to me, I find that that Brown's search of Turner was justified under *Terry* neither at its inception nor in its scope.

It argues that *Whitehead* is distinguishable because that decision was driven primarily by the Court's reluctance to allow the police to search a person based only on the inference of a common criminal enterprise among individuals who happen to be present in a location where the police have probable cause to believe evidence of a crime will be found. The Commonwealth contends that, in this case, we have no need to be concerned about an unjustified inference of common enterprise because Turner was the only person in the vehicle. Commonwealth's Reply, at 4.

I acknowledge that the inappropriateness of inferring a common criminal enterprise among individuals based merely on their proximity to one another and to a location that the police had probable cause to search was prominent in the Court's rationale in *Whitehead*. I also acknowledge that this rationale applies with much less force under the present facts. But emphasis of this basis for distinction ignores the enormous degree to which *Whitehead* is similar. The Commonwealth characterizes the issue before me as whether "a drug-sniffing dog's indication of the presence of a narcotics odor grant[s] probable cause over the vehicle and its occupants, or just the vehicle." Commonwealth's Reply, at 4. Conveniently, the Commonwealth's framing of the issue ignores a potentially critical fact, Turner was not an occupant of the vehicle when the dog alerted to the possible presence of contraband in or on the vehicle. Thus, more accurately put, the issue is whether a drug-sniffing dog's indication of the presence of a narcotics odor grant[s] probable cause over the vehicle and its *prior* occupants or just the vehicle. In *Whitehead*, the Court found that a dog's indication of the presence of narcotics in the vehicle did not establish probable cause

to search a vehicle occupant, even though the occupant was in the vehicle when the dog alerted and even though the police had already established by process of elimination a much greater suspicion that contraband might be found on Whitehead's person. Obviously, *Whitehead* is factually distinct from the present case, but the distinctions *support* this Court's conclusion much more than they subvert it.

The Commonwealth also suggests that the Supreme Court's decisions regarding the automobile exception to the search warrant requirement be extended to include the occupants of an automobile. Commonwealth's Reply, at 5 ("The logic of these cases suggest that, if the contents of a car are subject to lawful search and all of the containers that may conceal the object of the search are included as part of the car, that the occupants of the car should be subject to search as well."). I cannot declare emphatically enough this Court's unwillingness to do so. As discussed above, the United States Supreme Court has clearly staked out different expectations of privacy for property in an automobile and property on our person. Reducing a person's expectation of privacy and thereby diminishing a person's Fourth Amendment protections based on the novel theory that a person in an automobile is merely another "container" in the vehicle subject to search under the exception improperly conflates these two standards and perverts the principles that gird the Supreme Court's decisions in this area. When confronted with an opportunity to do so, the Supreme Court expressly rejected this approach. *See Di Re*, 332 U.S. at 587 ("We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled.").

The Commonwealth unfairly characterizes our Supreme Court in *Whitehead* as assuming "without support" that people and vehicles are different in terms of calculating probable cause to search. *Id.* In the above analysis, I have set out the basis for the distinction, implicitly supported by our Supreme Court in *Whitehead* and more expressly drawn by the United States Supreme Court in its Fourth Amendment cases, between persons and automobiles. Ironically, the Commonwealth is critical of our Supreme Court for failing to provide support for the reasoning in *Whitehead*, but it offers no support for its novel and aberrant theory that an occupant of a vehicle is merely another "container" therein, other than its appeal to "logic." *Id.* Yet the "logic" of the Commonwealth's position depends on its stunted view of the Fourth Amendment.

In view of the proscription of the Fourth Amendment against unreasonable searches and the decisions of both the United States Supreme Court and the Supreme Court of Virginia construing that provision, I find that the search of Turner's person was unconstitutional.

*Good Faith Exception*

The Commonwealth argues in the alternative that, even if the search of Turner's person violated the Fourth Amendment, the fruits of the search may nonetheless be admissible under the good faith exception. The justification of the good-faith exception is that, when police conduct does not offend the Fourth Amendment, but the offense stems from judicial judgment or clerical error, then the exclusionary rule serves no function as a deterrent to police conduct. *United States v. Leon*, 468 U.S. 897, 919-21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

Under certain factual settings, the Court has held that a good faith error committed by police personnel will not result in exclusion of the evidence. For example, in *Herring*, the police arrested the defendant pursuant to what they reasonably believed was a valid arrest warrant. But the warrant had been rescinded prior to the arrest, and, due to a clerical error, the database on which the arresting officers relied had not reflected the rescission. The defendant sought to exclude the products of the search incident to his arrest because the arrest was not based on a legitimate warrant. The Court held that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance . . . on a subsequently recalled warrant" cannot justify the substantial cost of exclusion. *Herring v. United States*, 555 U.S. 135, 146, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009). I note that the *Herring* majority carried only five justices, meaning four justices voted to exclude the evidence, of whom two filed dissenting opinions. The Commonwealth leans on *Herring* and similar decisions for its contention that Brown acted reasonably in these circumstances, and his error does not rise to the level of "deliberate, reckless, or grossly neglectful" disregard for the Fourth Amendment that warrants exclusion of the evidence. Commonwealth's Reply, at 9.

It is true, as the Commonwealth notes, that application of the good faith exception involves a balancing between the deterrent effect of the exclusionary rule and the harms of exclusion to society. *Id.* at 7. In this case, the Commonwealth argues, "Brown's decision to conduct a search of the defendant's person [was] an innocent mistake in which the police officer was following established procedures which he reasonably believed were in compliance with the Fourth Amendment." *Id.* at 8. I do not doubt that Brown was "innocent" in the sense that he believed he acted within the bounds of the Constitution. However, in determining whether to apply the good faith exception, the officer's conduct is measured by an objective standard. *Leon*, 468 U.S. at 920, n. 20 ("We emphasize that the standard of reasonableness we adopt is an objective one."). This standard "requires officers to have a reasonable knowledge of what the law prohibits." *Id.* (citing *United States v. Peltier*, 422 U.S. 531, 542, 95 S. Ct. 2313, 45 L.

Ed. 2d 374 (1975)). An officer's subjective belief in the legitimacy of his conduct is not relevant.

Nonetheless, it is true that the "flagrancy of the police misconduct constitutes an important step in the calculus of applying the exclusionary rule." *Herring*, 555 U.S. at 143. Thus, the exclusionary rule applies (and the good faith exception does not) "only if it can be said that the law enforcement officer had knowledge, *or may properly be charged with knowledge*, that the search was unconstitutional under the Fourth Amendment." *Leon*, 468 U.S. at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 542, 95 S. Ct. 2313, 45 L. Ed. 2d 374 (1975)) (emphasis added).

I find, under these circumstances, that a properly trained officer would not reasonably conclude that he had probable cause to search (i.e., to arrest) an individual based only on a positive alert by a drug-sniffing dog on a vehicle that the individual had occupied immediately prior to the alert. In *Herring*, the Court indicated that evidence should be excluded only when it is "obtained by flagrant or deliberate violation of rights," *Herring*, 555 U.S. at 143 (quoting The Bill of Rights as a Code of Criminal Procedure, 53 Calif. L. Rev. 929, 953 (1965)), and therefore the exclusionary rule is most justified in the event of intentional conduct that is patently unconstitutional. *Id*. The Court discussed two such flagrant violations of the Fourth Amendment that warranted exclusion. In *Weeks v. United States*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652, T.D. 1964 (1914), officers broke into the defendant's home, confiscated incriminating papers, then returned again with a U. S. Marshal to confiscate even more. *Id*. at 386. "Not only did [the officers] have no search warrant . . . but they could not have gotten one had they tried." *Herring*, 555 U.S. at 143. The officers "were so lacking in sworn and particularized information that `not even an order of court would have justified such procedure'." *Id*. (quoting *Weeks*, 232 U.S. at 393-94). And in *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, 86 Ohio Law Abs. 513 (1961), officers forced themselves "into the defendant's house, kept her lawyer from entering, brandished what the court concluded was a false warrant, then forced her into handcuffs and canvassed the house for obscenity." *Id*. at 644-45. In distinguishing both *Weeks* and *Mapp*, the Court in *Herring* noted that the police conduct in that case arose from "*isolated* negligence *attenuated* from the arrest," *Herring*, 555 U.S. at 137 (emphasis added), which was "far removed from the core concerns that led us to adopt the [exclusionary] rule in the first place." *Id*. at 144. In light of the *Herring* rationale, it is clear to this Court that Brown's conduct, though perhaps not as egregious, is more like that at issue in *Weeks* or *Mapp* than that in *Herring*.

Even if Brown's contravention of the Fourth Amendment was merely "negligent" and was not deliberate or reckless, it was neither "isolated" nor "attenuated" from the circumstances of the arrest. Brown's "error" directly implicated the very rights and principles that the exclusionary rule

is designed to address. That is, the error was one of judgment regarding the scope of his authority and Turner's rights under the Fourth Amendment. This is plainly distinguishable from the error in *Herring*, which was unquestionably "attenuated" because it was merely clerical and had no relation to police judgment regarding constitutional constraints.

Nor is it similar to the errors in *Davis v. United States*, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011), and *Illinois v. Krull*, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987), two other cases on which the Commonwealth relies. In each of those cases, the police acted in reasonable reliance on existing authority, Supreme Court precedent and state statute, respectively, that was invalidated *after the police action* by subsequent case law. Neither of these cases provide any compelling analogue to the present case.

Moreover, Brown's conduct apparently was not "isolated." The Commonwealth insists, "[t]here is no evidence to support the conclusion that this is a case of systematic negligence. . . ." Commonwealth's Reply, at 9. Yet, the Commonwealth repeatedly characterizes Brown's conduct as "following established procedures." *Id.* at 8, 9. Moreover, the Commonwealth indicates that "defense attorneys had never challenged this procedure before." *Id.* at 9. These statements belie the notion that this was merely an isolated instance of misjudgment and imply that Brown (and perhaps other officers) routinely conducts searches under these circumstances. Thus, even if I were to accept the Commonwealth's interpretation of the applicability of the exclusionary rule, that it can never apply to isolated instances of negligent but objectively reasonable conduct, the Commonwealth's statements suggest habitual violations of the Fourth Amendment in a manner that is not objectively reasonable.

Therefore, this Court finds that the deterrent effect of excluding the evidence is of greater weight than the potential harm to society, which would entail a "probabl[e] . . . acquittal on [a] single possession charge." *Id.* at 10. I disagree with the Commonwealth's claim that "[t]he type of mistake made here is not likely to be influenced by imposition of the exclusionary rule." *Id.* Indeed, in this Court's judgment, the police conduct at issue in this case is closely related to the "core concerns that led [the Supreme Court] to adopt the [exclusionary] rule in the first place," *Herring*, 555 U.S. at 144.

## Conclusion

The Court grants the Motion to Suppress. Because the arrest was predicated upon the products of an unlawful search, the Court will exclude all evidence obtained in that search, as well as any statements made by Turner while under arrest.